## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

_____

KIMBERLY A. ESTERS,                     )
25 Lundington Lane                      )
Fredericksburg, VA 22406,               )
                                        )
        Plaintiff,                      )          Civil Action No. _____
                                        )
             v.                         )
                                        )
KIRSTJEN NIELSEN, Secretary             )
U.S. Department of Homeland Security    )          Jury Demanded
Washington, D.C. 20528,                 )
                                        )
Serve: Jefferson Sessions               )
Attorney General for the United States  )
United States Department of Justice     )
950 Pennsylvania Avenue, N.W.           )
Washington, D.C. 20530-0001             )
                                        )
U.S. Attorney's Office                  )
555 Fourth Street, N.W.                 )
Washington. D.C. 20530                  )
                                        )
        Defendant.                      )
_____)

## COMPLAINT

**COMES NOW** Plaintiff, Kimberly A. Esters (hereinafter "Plaintiff" or "Ms. Esters"), by and

through her undersigned counsel, and sues Kirstjen Nielsen, Secretary, of the United States

Department of Homeland Security (hereinafter "DHS" or "Defendant") in her official capacity as

Secretary of Department of Homeland Security, and for cause of action states, as follows:

## NATURE OF THE CASE

1.      Plaintiff Kimberly Esters (hereinafter "Plaintiff" or "Ms. Esters") brings this civil

action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended,

42 U.S.C. § 2000e, *et seq*., 42 U.S.C. § 1981a, and 29 U.S.C. § 623(a) for relief from Defendant's

unlawful discrimination of Ms. Esters on the basis of her race (African American), sex (Female), age (Date of Birth: April 25, 1959), and reprisal, and being subjected to a hostile work environment during the course of her employment with the Department of Homeland Security ("DHS").

2. Defendant DHS discriminated against Plaintiff on the basis of her race (African American), sex (Female), age (Date of Birth: xx xx, 1959), and reprisal, and subjected her to a hostile work environment during the relevant time period.

## PARTIES

3. Plaintiff is currently domiciled at 25 Lundington Lane, Fredericksburg, VA 22406. Plaintiff is a resident of the State of Virginia and is a United States citizen.  At all relevant times, Plaintiff was an employee of the DHS, Office of Cyber Infrastructure Analysis ("OCIA") in the National Protection and Program Directorate.

4. Defendant Secretary Kirstjen Nielsen ("Defendant" or "Secretary Nielsen") is being sued in her official capacity as the Secretary for the United States Department of Homeland Security.

5. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6. This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*, and 29 U.S.C. § 623(a).

7.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

8.    Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

## EXHAUSTION OF REMEDIES

9.    Plaintiff has exhausted all of her administrative remedies.

10.    On or about June 5, 2014, Ms. Esters initiated contact with the Agency EEO office.

11.    On or around August 8, 2014, Ms. Esters timely filed a formal complaint of discrimination with the Agency's EEO office, which was investigated by the Agency.  *See* Agency Case No. HS-HQ-01332-2014.

12.    Ms. Esters amended her complaint on or about October 3, 2014, which was accepted for investigation by the Agency. *Id*.

13.    After the investigation of her EEO complaint and receipt of the Report of Investigation ("ROI"), on or about June 24, 2015, Plaintiff timely requested a Hearing before the United States Equal Employment Opportunity Commission ("EEOC").  *See* EEOC No. 570-2015-01021X.

14.    On or about April 3, 2018, DHS filed its Motion for Summary Judgement.

15.    On or about May 23, 2018, Ms. Esters filed her Opposition, to which the Agency replied on May 30, 2018.

16.     On or about June 28, 2018, the EEOC issued an Order Entering Judgment, granting the Agency's Summary Judgment Motion. *See Id.*

17.     The Agency was ordered to file a Final Agency Decision within forty (40) days of receipt of the hearing file and this decision, after which Plaintiff would have 90 days to file a federal district court complaint.

18.     However, the Agency never issued the Final Agency Decision.  Thus, the Administrative Judge's Decision became final on August 7, 2018.

19.     Plaintiff hereby timely filed her action within 90 days after the EEOC's Decision became final.

## **FACTS**

20.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

21.     At all times relevant to the claims made herein, Plaintiff was an employee of the Department of Homeland Security (DHS), Office of Cyber and Infrastructure Analysis (OCIA), National Protection and Programs Directorate (NPPD) in Washington, DC.

22.     Ms. Esters position was Management and Program Analyst.

23.     Ms. Esters is an African-American female, born on April 25, 1959.

24.     During all times relevant to her complaint, Ms. Esters' first line supervisor was Mr. Rick Bosarge (Caucasian, Male, over 40 years old).  Her second line supervisor was Mr. Tommy Brown, OCIA Chief of Staff (African-American, Male, over 40 years old).

25.     Ms. Esters' ailing mother, who was 89 years old at the time, required care, that Ms. Esters had to provide.

26.     Mr. Bosarge became Ms. Esters' supervisor in or around mid-February 2013.

27.     On or about March 1, 2013, Mr. Bosarge granted Ms. Esters the ability to telework so that she could care for her ailing mother.

28.     However, shortly upon learning of the agreement, Mr. Brown directed Mr. Bosarge to revoke the telework agreement without a valid or legally sound reason.

29.     Mr. Brown told Mr. Bosarge that if Ms. Esters needed to care for her mother, she would need to take leave.

30.     Other similarly situated employees outside of Ms. Esters' protected classes were allowed to telework, such as D. Evans (Caucasian), and T. Clemons were allowed to telework for family health/care issues.

31.     In July 2013, Ms. Esters was subjected to a false and misleading performance evaluation with a rating of a 3.1.

32.     The rating of 3.6 is above average and the rating of 3.0 to 3.4 is average.

33.     Specifically, Mr. Brown and Mr. Bosarge used the illness of Ms. Esters' mother to improperly and inaccurately issue her a poor performance rating.

34.     Her previous rating was a 3.6 and for her 2013 mid-year review, Mr. Brown and Ms. Sylvonica Madlock, the Lead for the section, told Ms. Esters that she was performing at a 3.6 to 3.7 level.

35.     Ms. Esters was never informed that her performance dropped from that 3.6 level.

36.     Ms. Esters requested to meet with Mr. Brown to discuss her performance rating, but he refused.

37.     Ms. Esters voiced her concerns regarding her performance rating up the chain of command, writing an e-mail to that chain.

38.     Ms. Madlock sent an e-mail to Director John Murphy that a meeting had been scheduled with the whole section without the presence of Mr. Bosarge.

39.     Mr. Brown was upset that Ms. Esters went to his supervisor to discuss her performance rating, after attempting to discuss it with Mr. Brown.

40.     Mr. Brown said to her, "I thought we talked about how you need to handle matters with your performance evaluation. I told you how you could work on communication skills with Rick."

41.     Starting in January 2014 and continuing during all relevant times of this complaint, Ms. Esters has been forced to work without a Position Description and outside of her job classification.

42.     In or around January 2014, Ms. Esters' section had a meeting with Director John Murphy and other individuals, wherein the group discussed concerns with Mr. Bosarge and moving their billets back to Infrastructure Protection ("IP").

43.     After that meeting, Mr. Brown's behavior became more negative and harassing towards Ms. Esters.

44.     On or about February 3, 2014, Mr. Brown spoke harshly and disrespectfully to Ms. Esters, as he had done on a near daily basis, displaying his anger at her in the presence of other employees.

45.     On or about May 7, 2014, Mr. Brown yelled at Ms. Esters, telling her she needed to have his one-pager at the front office meeting, which was not Ms. Esters' responsibility.

46.     Ms. Esters told Mr. Brown that she had e-mailed his executive assistants the one-pagers and they needed to put the one-page in Mr. Brown's notebook.

47.     Mr. Brown refused to listen to Ms. Esters.

48.     On or about May 16, 2014, Tracey Young was rude and loud to Ms. Esters during a discussion about travel, and threw her travel documents at Ms. Esters.

49.     Mr. Bosarge submitted e-mails from Ms. Esters, D. Chung, and R. Ragin to Mr. Brown, which detailed harassment that Ms. Esters suffered at the hands of Tracey Young.  The Agency failed to take any action to address Ms. Young's behavior, despite the report to Mr. Brown.

50.     However, after the incident, Ms. Esters was confronted by Ms. Young and her supervisor, Christina Saari, while walking to the Metro Station.  Ms. Esters felt intimidated and uncomfortable by them approaching her outside of work.

51.     On or about May 27, 2014, Mr. Brown yelled at Ms. Esters, accused her of hiding information from executive assistants, and forced Ms. Esters to leave her cubicle in an effort to embarrass her in front of her co-workers.

52.     Also on or about May 27, 2014, Mr. Brown accused Ms. Esters of not processing his travel expense report, despite Ms. Esters confirming that the Deputy Chief of Staff had Mr. Brown's documents in her queue.

53.     On or about May 29, 2014, Mr. Brown cornered Ms. Esters in the Sensitive Compartmented Information Facility ("SCIF"), where he questioned her, in front of R. Ragin, in a hostile and badgering tone, regarding his $2,000 travel voucher.

54.     Ms. Esters is approximately 5 feet, 4 inches tall.

55.     Mr. Brown appeared to be approximately 6 feet, 4 inches tall.

56.     During the encounter, Mr. Brown was biting his lip and glaring at Ms. Esters in an intimidating manner.

57.     Consistently throughout this timeframe, Mr. Brown tried to embarrass Ms. Esters by raising his voice with Ms. Esters or asking her questions she would not know the answers to because she was a new Contracting Officer Representative.

58.     After Ms. Esters filed her informal EEO complaint in June 2014, Mr. Brown received notice of her complaint.

59.     After she filed her EEO complaint, Mr. Brown made it clear to Ms. Esters that she would never be promoted.

60.     On or about September 16, 2014, Ms. Esters learned that contractor R. Snyder (Caucasian, male) was placed in a position in the Office of Cyber and Infrastructure Analysis ("OCIA") without competition.  The position had the potential for promotion to GS-12.

61.     Ms. Esters was never given the opportunity to apply or compete for the position.

62.     Mr. Snyder failed to make the certification list for a Management and Program Analyst for a GS 9/11.  Ms. Esters did make the certification list.

63.     Ms. A. Harris was in charge of pulling information for individuals who were referred for different job announcements.

64.     Ms. Harris noted that she has observed on several occasions Mr. Brown exhibiting a lack of respect in his behavior towards Ms. Esters, and towards women in general.

65.     Ms. Harris also stated that she has noticed that Mr. Brown favors Caucasians over African-Americans, particularly African-American women.

66.     In or around November 2014, Ms. Esters applied to the three Management and Program Analyst positions, as advertised under Vacancy Announcement Number FS-1244694-AC15.

67.    Mr. Bosarge informed Ms. Esters that only one position was being filled and that he was the selecting official.

68.    During the interview, Ms. Esters was asked interview questions that were not clear and seemed to be based on the Intel Analyst position, not the acquisition positions.

69.    On the interview documents, Ms. Esters was documented as "Do Not Hire."

70.    On or about January 22, 2015, Mr. Bosarge informed Ms. Esters that she was not selected for the three Management and Program Analyst positions, as advertised under Vacancy Announcement Number FS-1244694-AC15.

71.    On or about July 23, 2014, Mr. Brown initiated a gap analysis to raise Mr. Ragin's prior position from GS-11 to GS-12.

72.    No such gap analysis was requested to discover whether Ms. Esters' position could have been increased from GS-11 to GS-12.

73.    After Ms. Esters left her position, Mr. Bosarge hired a replacement at the GS-12 level.

74.    In or around June 2014, Mr. Brown attempted to intimidate Ms. Esters by asking about her EEO complaint.  He asked her if she was "being prevented from filing an EEO" complaint.  When Ms. Esters responded, "no," Mr. Brown said, "I was told you were having problems."

## CAUSES OF ACTION

### COUNT ONE
### (Discrimination on the Basis of Race)

75.    Ms. Esters incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

76.    As an African American, Plaintiff is a member of a protected class.

77.     Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including but not limited to: having her telework agreement to care for her ailing mother revoked, given a misleading and inaccurate performance evaluation with a lower than justified rating, being forced to work without a Position Description and outside her job classification, being subjected to Mr. Brown's hostile and disrespectful comments and behavior, Mr. Brown yelling at Ms. Esters and attempting to embarrass her in front of her co-workers on multiple occasions, failing to promote Ms. Esters, or select her for any of the Management and Program Analyst positions, and by clearly favoring other employees who were Caucasian, over Ms. Esters, in violation of Title VII.

78.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff s employment since she had a significant change in her duties and responsibilities.

79.     Defendant knew that Plaintiff is African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected to because of her race (African American).

80.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American).

81.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race (African American).

82.     As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

83.     Plaintiff's race (African American) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

84.     Plaintiff's race (African American) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

85.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

86.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race (African American).

87.     Defendant discriminated against Plaintiff because of her race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

88.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

89.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing throughout the period in this complaint.

90.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.      Award compensatory damages;

b.      Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.      Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.      Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e.      Require Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.      Require Supervisory training for the supervisors at issue herein;

g.      Award equitable, declaratory, and injunctive relief; and

h.      Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### (Discrimination on the Basis of Sex)

91.     Ms. Esters incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

92.     Plaintiff is a member of a protected class in that she is female.

93.     Because of her sex (Female), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including but not limited to: having her telework agreement to care for her ailing mother revoked, given a misleading and inaccurate performance evaluation with a lower than justified rating, being forced to work without a Position

Description and outside her job classification, being subjected to Mr. Brown's hostile and disrespectful comments and behavior, Mr. Brown yelling at Ms. Esters and attempting to embarrass her in front of her co-workers on multiple occasions, failing to promote Ms. Esters, or select her for any of the Management and Program Analyst positions, and by clearly favoring other employees who were Male, over Ms. Esters, in violation of Title VII.

94.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment since she had a significant change in her duties and responsibilities.

95.     Defendant knew that Plaintiff is a female prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of her sex (Female).

96.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex (Female).

97.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her sex (Female).

98.     As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

99.     Plaintiff's sex (Female) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

100.    Plaintiff's sex (Female) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

101.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

102.    Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex (Female).

103.    Defendant discriminated against Plaintiff because of her sex (Female) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

104.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

105.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing throughout the period in this complaint.

106.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory damages;

b.    Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional

potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.      Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.      Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e.      Require Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.      Require Supervisory training for the supervisors at issue herein;

g.      Award equitable, declaratory, and injunctive relief; and

h.      Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
### (Age Discrimination)

107.    Ms. Esters incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

108.    The Age Discrimination in Employment Act makes it unlawful for an employer to take adverse actions against an employee "because of such individual's age." 29 U.S.C. § 623(a).

109.    At all relevant times, Ms. Esters was over the age of 40 (DOB: xx-xx-1959).

110.    The Defendant did not treat other employees under the age of 40 the same as Ms. Esters was treated.

111.    Because of her age, Ms. Esters suffered adverse employment actions, including having her telework agreement to care for her ailing mother revoked, given a misleading and inaccurate performance evaluation with a lower than justified rating, being forced to work without

a Position Description and outside her job classification, being subjected to Mr. Brown's hostile and disrespectful comments and behavior, Mr. Brown yelling at Ms. Esters and attempting to embarrass her in front of her co-workers on multiple occasions, and failing to promote Ms. Esters, or select her for any of the Management and Program Analyst positions.

112. Defendant's discriminatory treatment was intentional.

113. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Ms. Esters has suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses, and costs – and is entitled to all available legal and equitable remedies.

114. Ms. Esters has incurred lost wages, loss of reputation, and loss of career opportunity now and into the future, and all of the other losses states without Ms. Esters contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorneys' fees, costs, and expenses incurred for this action;

    e.       Require Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    f.        Require Supervisory training for the supervisors at issue herein;

    g.      Award equitable, declaratory, and injunctive relief; and

    h.      Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FOUR
### (Retaliation)

115.    Ms. Esters incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

116.    Ms. Esters engaged in protected activity when she initiated contact with the Agency EEO office and filed an informal EEO complaint on or about June 5, 2014.

117.    Specifically, she opposed discrimination and harassment in her workplace by filing the complaint alleging harassment and disparate treatment.  She has continued to prosecute her complaint to the present, actively and openly participating in the process at every step.

118.    Because of the protected activity described above, Defendant denied Ms. Esters the opportunity to compete for a position for which contractor Robert Synder was selected without applying; failed to promote and/or increase her grade level Ms. Esters; and failed to select Ms. Esters for three Management and Program Analyst positions, advertised under Vacancy Announcement Number FS-1244694-AC15.

119.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and

promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

120.   Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing at all times subsequent to her initiation of EEO activity on or about June 5, 2014.

121.   Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Award compensatory damages;

b.   Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d.    Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e.   Require Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f.   Require Supervisory training for the supervisors at issue herein;

g.   Award equitable, declaratory, and injunctive relief; and

h.   Award such other and further relief as this Honorable Court deems just and

proper.

**COUNT FIVE**
**(Hostile Work Environment)**

122.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

123.     As a result of Plaintiffs protected classes (race (African American), sex (Female), age (DOB: xx, xx, 1959), and reprisal (filing her EEO complaint)), Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

124.    Plaintiff was regularly and continually subjected to harassing conduct as alleged throughout this Complaint, including but not limited to having her telework agreement to care for her ailing mother revoked, given a misleading and inaccurate performance evaluation with a lower than justified rating, being forced to work without a Position Description and outside her job classification, being subjected to Mr. Brown's hostile and disrespectful comments and behavior, Mr. Brown yelling at Ms. Esters and attempting to embarrass her in front of her co-workers on multiple occasions, failing to promote Ms. Esters, or select her for any of the Management and Program Analyst positions, and making it clear Mr. Brown would never promote Ms. Esters, which created a hostile and abusive work environment.

125.    Plaintiff believes that she was subjected to a hostile work environment based on her race (African American) and/or sex (Female) and/or age (DOB: xx, xx, 1959), and/or reprisal (filing her EEO complaint in June 2014 and openly engaging in the EEO process thereafter).

126.    Defendant's unlawful conduct was unwelcome.

127.    Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

128.    Plaintiff was subjected to harassment because of her race (African American), sex (Female), age (DOB: xx, xx, 1959), and reprisal (filing her EEO complaint in June 2014 and openly engaging in the EEO process thereafter) and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

129.    Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints of the harassment to management officials, the harassment continued unabated and increased over time.

130.    By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

131.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

132.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing throughout the period of this complaint.

133. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Award damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e. Require Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f. Require Supervisory training for the supervisors at issue herein;

g. Award equitable, declaratory, and injunctive relief; and

h. Award such other and further relief as this Honorable Court deems just and proper.

## **EQUITABLE RELIEF**

134. Plaintiff incorporates by reference to, all facts, law, and/or allegations contained in the preceding paragraphs, as if fully set forth herein.

135.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, presents clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

 a. Order the Defendant to institute a policy and procedure advising its employees about anti-discrimination laws and implementing enforcement mechanisms;

 b. Order Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

 c. Order Supervisory training for the supervisors at issue herein; and

 d. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

136.    Plaintiff demands a trial by jury on all issues set forth herein.

Dated:
November 5, 2018      Respectfully submitted,


      By: _/s/ *Stephanie Rapp-Tully, Esq.*_
        Stephanie Rapp-Tully (D.C. Bar 1016900)
        Tully Rinckey, PLLC
        815 Connecticut Ave., N.W.
        Suite 720
        Washington, DC 20006
        (202) 787-1900
        SRappTully@fedattorney.com

        *Counsel for Plaintiff Kimberly Esters*